IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH BANKS<br>8837 Chinaberry Circle N<br>Macedonia, Ohio 44056 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT** |
| HHC OHIO, INC.<br>Corp. Service Co.,<br>Statutory Agent<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | ) ) ) ) ) ) ) | **Jury Demand Endorsed Hereon** |
| Defendant. | ) | |

Plaintiff, Judith Banks, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Banks is a resident of the city of Macedonia, county of Summit, state of Ohio.

2. HHC Ohio, Inc. d/b/a Windsor – Laurelwood Center for Behavioral Medicine (hereinafter "HHC") is a domestic corporation with its principal place of business located at 35900 Euclid Avenue, Willoughby, Ohio 44094.

## JURISDICTION & VENUE

3. All of the material events alleged in this Complaint occurred in Lake County.

4. This Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Banks is alleging federal law claims under Title VII of the Civil Rights Act of 1964.



5. This Court has supplemental jurisdiction over Banks' state law claims pursuant to 28 U.S.C. § 1367 as Banks' state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 300 days of the conduct alleged below, Banks filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00070 against HHC.

8. On or about January 11, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Banks regarding the Charges of Discrimination brought by Banks against HHC in EEOC Agency Charge No. 532-2021-00070.

9. Banks received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

10. Banks has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Banks has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

12. Banks is a former employee of HHC.

13. Banks worked for HHC as the director of Human Resources at the Laurelwood location.

14. Banks's employment with HHC began on or about March 9, 2020.

15. Banks's initial training in Pennsylvania was cancelled due to COVID-19.

16. Due to Bank's initial training being cancelled due to COVID-19, Banks was trained and onboarded on-site.

17. Due to the change in training, Banks's training was not adequate.

18. HHC uses multiple different systems for employee and patient files.

19. Banks was not fully trained on the multiple systems used by HHC.

20. Because of the change in training due to COVID-19, Polly Constintini, HHC's regional HR director, told Banks to reach out to her as necessary for help.

21. On or about the week of March 16, 2020, Banks met with Shelly Zimmerman.

22. Zimmerman is the CEO of HHC.

23. At the meeting, Zimmerman provided Banks with a document detailing the reasons for termination of Banks' predecessor-director of HR. (hereinafter "Previous Director Meeting").

24. In the Previous Director Meeting, Banks was informed the previous director was terminated due to often absences from the office and skipping Flash Meetings.

25. The Flash Meetings mentioned in Previous Director Meeting were only mandatory on Mondays.

26. On or about April 28, 2020, Banks met with Laurie Miller and Zimmerman.

27. Before the meeting on April 28, 2020, Zimmerman informed Banks she expected Miller to report sexual harassment from a doctor (Dr. Joshua Zarowitz).

28. Before the meeting on April 28, 2020, Zimmerman told Banks that Miller was reporting sexual harassment because she was probably mad because she was written up.

29. Before the meeting on April 28, 2020, Zimmerman told Banks that Miller just wanted to make a retaliatory report.

30. At the meeting on April 28, 2020, Laurie Miller reported sexual harassment from Dr. Zarowitz. (hereinafter "Laurie's Report").

31. At the meeting on April 28, 2020, in response to Laurie's Report, Zimmerman told Miller she needed to communicate better with the doctor.

32. At the meeting on April 28, 2020, Banks understood Zimmerman's response to Laurie's Report to mean she did not take the report seriously.

33. At the meeting on April 28, 2020, Banks promised Miller she would investigate her report.

34. After the meeting on April 28, 2020, Zimmerman told Banks not to speak to the doctor.

35. After the meeting on April 28, 2020, Zimmerman told Banks not to investigate Laurie's Report at all.

36. After the meeting on April 28, 2020, Zimmerman also informed Banks the doctor had faced similar accusations about six months prior. (hereinafter "Prior Accusations").

37. After the meeting on April 28, 2020, Zimmerman told Banks the Prior Accusations had been handled.

38. Banks inferred from Zimmerman's statement that the Prior Accusations had been handled to mean they had not been handled through thorough investigation and disciplinary action as was proper.

39. After the meeting on April 28, 2020, Zimmerman instructed Banks to have Dr. Alf Bergman talk to Dr. Zarowitz about Laurie's Report.

40. After the meeting on April 28, 2020, Zimmerman told Banks Dr. Zarowitz would be more understanding if Dr. Bergman spoke to him as opposed to Banks speaking with him.

41. Banks knew it was her job as Director of HR to investigate Laurie's Report.

42. Zimmerman used her authority as CEO to prevent Banks from completing her job.

43. After the meeting on April 28, 2020, Banks told Zimmerman she was concerned the investigation into Laurie's report would be swept under the rug.

44. Zimmerman understood Banks' involvement into the investigation of sexual harassment was protected activity.

45. After the meeting on April 28, 2020, Zimmerman prevented Banks from speaking with Dr. Zarowitz. ("First Attempt").

46. In the course of investigation of Laurie's Report, Banks spoke with two nurses who had knowledge relating to Laurie's report.

47. In the course of investigation of Laurie's Report, Banks later tried to speak with Dr. Zarowitz. ("Second Attempt").

48. In response to Banks's Second Attempt at contacting Dr. Zarowitz, Zimmerman prevented Banks from speaking with the Doctor.

49. At all times herein, Leanne Smith was an HHC employee.

50. Upon information and belief, Smith is a close friend to Zimmerman.

51. After the start of the investigation into Laurie's Report, Smith began to question Banks' conduct. ("Smith Incidents").

52. After the start of the investigation into Laurie's Report, Smith would never accept Banks' answers to questions she asked.

53. During the Smith Incidents, Smith treated Banks with hostility.

54. During the Smith Incidents, Smith treated Banks with hostility due to her investigation into the Smith Reports.

55. After the start of the investigation into Laurie's Report, other senior leadership began refusing to engage with Banks.

56. At all times herein, Leslie McNamara was an employee of HHC.

57. McNamara worked as the Director of clinical services.

58. Senior Leadership was made up of Zimmerman, McNamara, the Interim Chief Nursing Officer, among others, upon information and belief.

59. After the start of the investigation into Laurie's Report, Senior Leadership began bullying Banks. ("Senior Leadership Incidents").

60. After the start of the investigation into Laurie's Report, Senior Leadership began talking down to Banks in meetings.

61. After the start of the investigation into Laurie's Report, Senior Leadership continually questioned Banks' competence in areas of Human Resources.

62. During the Senior Leadership Incidents, Senior Leadership acted with hostility toward Banks.

63. During the Senior Leadership Incidents, Senior Leadership acted with hostility toward Banks due to her investigation of Laurie's Report.

64. On or about May 5, 2020, Banks met with Miller about the investigation.

65. During the meeting on May 5, Banks told Miller she could not corroborate the complaint.

66. During the meeting on May 5, Banks provided Miller a letter about the investigation's outcome.

67. Due to the investigation into Laurie's Report, Costintini provided a template letter to Banks so Dr. Zarowitz could be provided a letter of the investigation's outcome.

68. Due to the investigation into Laurie's Report, Banks provided the template letter to Zimmerman for Dr. Zarowitz.

69. When Banks provided the template letter to Zimmerman for Dr. Zarowitz concerning the investigation outcome of Laurie's Report, Zimmerman prevented the letter from reaching Dr. Zarowitz.

70. When Banks provided the template letter to Zimmerman for Dr. Zarowitz concerning the investigation outcome of Laurie's Report, Zimmerman told Banks Dr. Bergman's conversation with Dr. Zarowitz was enough.

71. When Banks provided the template letter to Zimmerman for Dr. Zarowitz concerning the investigation outcome of Laurie's Report, Zimmerman told Banks no letter would be given to Dr. Zarowitz about the investigation.

72. When Zimmerman prevented the letter concerning the outcome of the investigation into Laurie's Report from getting to Dr. Zarowitz, Banks told Zimmerman she disagreed with keeping the letter from Dr. Zarowitz.

73. In response to Zimmerman's intervention into the investigation, Banks complained to Zimmerman that her actions concerned a failure to investigate Laurie's Report.

74. When Banks told Zimmerman she disagreed with keeping the letter from Dr. Zarowitz, Banks reminded Zimmerman of the Previous Accusations.

75. When Banks told Zimmerman she disagreed with keeping the letter from Dr. Zarowitz and reminded Zimmerman of the Previous Accusations, Zimmerman told Banks the Previous Accusations were irrelevant to Laurie's Report.

76. When Zimmerman told Banks the Previous Accusations were irrelevant to Laurie's Report, Banks asked Zimmerman if HHC Corporate was aware of the Previous Accusations.

77. When Banks asked if HHC Corporate was aware of the Previous Accusations, Zimmerman said HHC Corporate was aware of the Previous Accusations.

78. When Banks asked if HHC Corporate was aware of the Previous Accusations, Zimmerman told Banks the legal department had gotten involved due to the Previous Accusations.

79. After presenting the outcome of the investigation to Miller, Banks remained concerned about Zimmerman's prevention of the investigation into Laurie's Report.

80. Throughout May, Banks was tasked with presenting FMLA reports to Senior Leadership. ("FMLA Presentations Incidents").

81. When Banks was presenting the FMLA reports to Senior Leadership, Zimmerman and the Interim Chief Nursing Officer would yell at Banks.

82. Because Senior Leadership would yell at Banks during her FMLA presentations, Senior Leadership did not allow Banks to do her job.

83. Due to the FMLA Presentations Incidents, Banks experienced severe anxiety.

84. At the FMLA Presentations Incidents, Senior Leadership embarrassed Banks.

85. During the FMLA Presentation Incidents, Senior Leadership acted with hostility toward Banks.

86. During the FMLA Presentation Incidents, Senior Leadership acted with hostility toward Banks due to her investigation into Laurie's Report.

87. Senior Leadership did not treat any other similarly-situated employee the way they treated Banks in the FMLA Presentations Incidents.

88. Senior Leadership had no non-retaliatory reason for treating Banks in a discriminatory manner during the FMLA Presentation Incidents.

89. On or about May 8, 2020, Banks met with Zimmerman.

90. At the meeting on May 8, Banks was presented with a final written warning. ("Written Warning").

91. The Written Warning accused Banks of not attending the Flash Meetings.

92. Banks consistently called in for the Flash Meetings.

93. The Written Warning accused Banks of miscommunicating staff concerns by lying about subordinates.

94. Banks never lied about subordinates.

95. The Written Warning accused Banks of misrepresenting communications.

96. Banks had never misrepresented communications.

97. The Written Warning accused Banks of communications regarding the CEO (Zimmerman).

98. At the meeting on May 8, Zimmerman told Banks she needed to attend all Flash meetings.

99. On or about May 15, 2020, Zimmerman told Banks she did not need to attend any of the Flash meetings.

100. At all times herein, Chantel Dlugos was an employee of HHC.

101. Dlugos was employed as an HR manager.

102. Dlugos overheard the conversation on May 15.

103. When Dlugos overheard the conversation on May 15, Dlugos reminded Banks the Written Warning regarded not attending Flash Meetings.

104. When Dlugos overheard the conversation on May 15, Dlugos reminded Banks that Zimmerman had used absence at Flash Meetings as a pretextual basis to terminate the previous HR Director.

105. Because of Zimmerman's statements on May 8 and May 15 regarding attendance at Flash Meetings, Banks felt Zimmerman was trying to trap her.

106. Because of Zimmerman's statements on May 8 and May 15 regarding attendance at Flash Meetings, Banks felt Zimmerman wanted to see her fail.

107. On or about May 30, 2020, Zimmerman sent an email to Banks. (hereinafter "New Nurse Email").

108. In the New Nurse Email, Zimmerman asked why a nurse had started the previous Tuesday.

109. The new nurse referred to in the New Nurse Email, had been hired by Banks' predecessor.

110. In response to the New Nurse Email, Banks informed Zimmerman she did not know why the new nurse had started.

111. When Banks responded she did not know about the new nurse in the New Nurse Email, Zimmerman admonished Banks that it had been made clear the company was in a hiring freeze in the previous meeting.

112. In response to the New Nurse Email, Banks reminded Zimmerman she had not hired the new nurse.

113. On or about June 8, 2020, Banks met with Zimmerman.

114. At the meeting on June 8, Banks was given termination papers and informed the reason for her termination was that "she just didn't step up" to the position.

115. At the meeting on June 8, Banks requested a termination letter.

116. At the meeting on June 8, Zimmerman informed Banks she would only provide a termination letter if Banks signed the termination document from the meeting.

117. At the meeting on June 8, Banks refused to sign the termination document from that day.

118. After the meeting on June 8, HHC refused to provide any termination documents to Banks.

119. Upon information and belief, HHC has a progressive disciplinary policy,

120. Upon information and belief, HHC's disciplinary policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

121. By terminating Banks, HHC violated its own progressive discipline policy.

122. On or about June 9, 2020, Banks was terminated in retaliation for investigating Laurie's Report.

123. On or about June 9, 2020, Banks was terminated for objecting to discriminatory treatment.

124. HHC did not proffer a legitimate non-discriminatory reason for terminating Banks.

125. As a result of HHC's conduct, Banks has suffered severe emotional distress, anxiety, and depression.

## COUNT I: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3(a)

126. Banks restates each and every prior paragraph of this complaint, as if it were fully restated herein.

127. As a result of the HHC's discriminatory conduct and promotion of as sexually harassing environment against employees, Banks complained about sexual harassment involving Dr. Zarowitz.

128. As a result of the HHC's discriminatory conduct and promotion of as sexually harassing environment against employees, Banks complained about Zimmerman's interference in the investigation into Laurie's Report of sexual harassment.

129. As a result of the HHC's discriminatory conduct and promotion of as sexually harassing environment against employees, Banks participated in an investigation into complaints regarding sexual harassment involving employees at HHC.

130. After engaging in protected complaints, Banks suffered adverse actions.

131. After engaging in an investigation regarding protected complaints, Banks suffered adverse actions.

132. After engaging in protected complaints, Banks was terminated.

133. After engaging in an investigation regarding protected complaints, Banks was terminated.

134. HHC's actions were retaliatory in nature based on Banks' opposition to the unlawful discriminatory conduct.

135. HHC's actions were retaliatory in nature based on Banks' participation in an investigation related to the opposition of unlawful discriminatory conduct.

136. Banks suffered emotional distress as a result of HHC's conduct, and is entitled emotional distress damages pursuant to Title VII, 42 U.S.C. § 2000e-3 *et seq.*

137. As a direct and proximate result of HHC's retaliatory discrimination against and termination of Banks, suffered and will continue to suffer damages.

### COUNT II: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

138. Banks restates each and every prior paragraph of this complaint, as if it were fully restated herein.

139. As a result of the HHC's discriminatory conduct and promotion of as sexually harassing environment against employees, Banks complained about sexual harassment involving Dr. Zarowitz.

140. As a result of the HHC's discriminatory conduct and promotion of as sexually harassing environment against employees, Banks complained about Zimmerman's interference in the investigation into Laurie's Report of sexual harassment.

141. As a result of the HHC's discriminatory conduct and promotion of as sexually harassing environment against employees, Banks participated in an investigation into complaints regarding sexual harassment involving employees at HHC.

142. After engaging in protected complaints, Banks suffered adverse actions.

143. After engaging in an investigation regarding protected complaints, Banks suffered adverse actions.

144. After engaging in protected complaints, Banks was terminated.

145. After engaging in an investigation regarding protected complaints, Banks was terminated.

146. HHC's actions were retaliatory in nature based on Banks' opposition to the unlawful discriminatory conduct.

147. HHC's actions were retaliatory in nature based on Banks' participation in an investigation related to the opposition of unlawful discriminatory conduct.

148. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

149. Banks suffered emotional distress as a result of HHC's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of HHC's retaliatory discrimination against and termination of Banks, suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Banks demands from HHC the following:

(a) Issue an order requiring HHC to restore Banks to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Banks for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Banks' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: Fred.bean@spitzlawfirm.com

*Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Judith Banks demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**